## DURST v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. May 8, 1920.)

No. 1783.

Intoxicating liquors ⟜131—Transfer to different vehicle in passing through prohibition state not an offense.

Where defendant was carrying whisky purchased in another state in an automobile within a prohibition state, intending as he claimed to carry it through into another state, an instruction that, if he transferred any part of it into another car within the state, it constituted a violation of Reed Amendment (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 8739a), regardless of his intention as to future transportation, held erroneous.

In Error to the District Court of the United States for the Eastern District of South Carolina, at Charleston; Henry A. Middleton Smith, Judge.

Criminal prosecution by the United States against George W. Durst. Judgment of conviction, and defendant brings error. Reversed.

D. S. Henderson, of Aiken, S. C. (Hendersons, of Aiken, S. C., on the brief), for plaintiff in error.

Francis H. Weston, U. S. Atty., of Columbia, S. C. (J. Waties Waring, Asst. U. S. Atty., of Charleston, S. C., on the brief), for the United States.

Before PRITCHARD and KNAPP, Circuit Judges, and ROSE, District Judge.

KNAPP, Circuit Judge. Durst was convicted of transporting intoxicating liquor into the state of South Carolina, in violation of the act of March 3, 1917, commonly known as the Reed Amendment (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 8739a). His defense was that he was taking the liquor to Augusta, Ga., and merely passing through the state of South Carolina. These facts appear:

Durst lived in Augusta. In the latter part of April, 1919, he purchased at Columbia, S. C., a secondhand Buick automobile, bearing a South Carolina tag and number, in which a few days later he went to Baltimore, Md., driving the car himself. In that city he bought some 240 quarts of whisky in bottles, quarts and pints, which he stowed in

the tool box and other parts of the automobile. He left Baltimore on the morning of May 3d, having with him a woman who was not his wife, and arrived late in the evening of the following day at Camden, S. C., where he stopped at a restaurant for supper. He there met, by appointment as the government contends, two men, Deitz and Williams, who had come from Columbia in a Cadillac car, and the party had supper together. Towards midnight they started for Columbia; Williams taking the woman in the Cadillac and going ahead, and Durst following with Deitz in the Buick. It seems that the authorities had been informed of this purchase of whisky by Durst, and that he was carrying it south in a Buick automobile, and accordingly officers were posted along the road a few miles out of Columbia for the purpose of apprehending him. The first car was halted by the officers, but allowed to pass when they found it was a Cadillac. Williams then went on a short distance and stopped, apparently waiting to see what happened to the other car. When Durst came along a few moments later, he was placed under arrest, and his car taken into possession by the officers. On the pretense that something was the matter with the Cadillac, Durst was permitted to go forward to fix it. Instead of doing so, or while pretending to do so, he spoke in whisper to Williams, who at once started off at great speed and was soon out of sight. What became of the Cadillac or its occupants is not disclosed. In the Buick car were found only about 160 quarts of liquor, and Durst made no attempt to account for the other 80 quarts purchased in Baltimore. The government contends that either at Camden, or afterwards on the road, a portion of the liquor was transferred to the Cadillac car, with the view to its disposition by Deitz and Williams in the state of South Carolina, and various circumstances, besides those above recited, are relied upon to sustain the contention.

As we deem it our duty to reverse the judgment on another ground, and as the proofs may not be the same on a second trial, it is unnecessary to say more than that the trial court did not err in refusing to direct a verdict for the defendant. After the jury had been out for an hour and a half without agreeing, they came into court for further instructions, and the following occurred:

"In response to a question of the foreman, the court instructed the jury that, if the defendant broke bulk, or transferred or delivered the liquor, or any part thereof, from one automobile to another at Camden, S. C., that was an infraction of the law, regardless of his intent as to future transportation.

"The defendant's counsel excepted to the foregoing answer of the court to the question of the jury and the exception was noted.

"Immediately after the asking and answering of the foregoing question, the jury returned a verdict of guilty on the first count and not guilty on the second count."

In our opinion the instruction thus given was clearly erroneous, and that it influenced and perhaps controlled the adverse verdict is evident from the record. The law is well settled. Durst had the right to transport his liquor by automobile through the prohibition state of South Carolina. United States v. Gudger, 249 U. S. 373, 39 Sup. Ct. 323, 63 L. Ed. 653. And that right was not lost or impaired by the transfer in that state of some portion of it to another automobile

—assuming that such a transfer was made—if he nevertheless intended in good faith that the whole of it should be carried on into the state of Georgia. Whether or not he had that intention may for present purposes be conceded to have been a question for the jury. On the government's theory, that was the crux of the case. But the jury were told in plain words, and must have understood the learned judge to mean, that the mere act of taking some of the bottles from the Buick car and placing them in the Cadillac, no matter for what reason, and even if with the purpose and intent of aiding and completing the movement to Augusta, constituted of itself a violation of the statute, and made the defendant liable to its penalties. We cannot uphold the ruling. To state the proposition is to reject it; and of the argument advanced in its support it is enough to say, as the Supreme Court said of the government's argument in the Gudger Case:

"In last analysis it but invites, not a construction of the statute as enacted, but an enactment by construction of a new and different statute."

As the error was obviously prejudicial, the defendant is entitled to a new trial.

Reversed.